[750 NYS2d 619]

In the Matter of CHARLES S. BUTIN, an Attorney, Respondent. GRIEVANCE COMMITTEE FOR THE TENTH JUDICIAL DISTRICT, Petitioner.

Second Department, November 18, 2002

**APPEARANCES OF COUNSEL**

*Robert P. Guido*, Syosset (*Dianne M. Saccone* of counsel), for petitioner.

*Nicholas C. Cooper*, Wayne, Pennsylvania, for respondent.

**OPINION OF THE COURT**

Per Curiam.

The petitioner, Grievance Committee for the Tenth Judicial District, served the respondent with a petition dated April 16, 2001, containing 11 charges of professional misconduct. After several days of hearings, the Special Referee sustained all 11 charges. The petitioner now moves to confirm the Special Referee's report and to impose such discipline as the Court deems just and proper. The respondent cross-moves, inter alia, to disaffirm the Special Referee's report or, in the alternative, to confirm so much of the Special Referee's report as finds, in mitigation, the respondent's character evidence "impressive" and to be "given careful consideration by the Court when considering what sanctions, if any, should be imposed on respondent," and holding in abeyance any final order of discipline pending a further mitigation hearing or hearings before the Special Referee. In the event the Court sustains the Special Referee's findings, the respondent asks that the Court limit the sanction imposed to a censure or a term suspension.

Charges One through Four are predicated upon the respondent's conduct regarding his dealings with Marie Edelman.

In July 1996, octogenarian Marie Edelman and her closest friend, Martha Reifforth, retained the respondent to assist in managing Edelman's assets. In January 1998, the respondent began transferring funds from two separate Chase Bank accounts, entitled Marie Edelman High Yield Savings Account and Marie Edelman Revocable Trust Account, respectively, by presenting transfer advices presigned in blank by either Edelman or Reifforth. The respondent induced Reifforth to sign the blank transfer advices with the assurance that such actions were reasonable and necessary for Edelman's benefit. He deposited those funds into his own professional account at Chase.

From January 1998 through January 1999, the respondent transferred a total of $45,000 from Edelman's High Yield Savings Account in five separate transactions and $37,000 from her Revocable Trust Account in 10 separate transactions. He deposited all of those funds into his own professional account.

In January 1999, the balance in the respondent's professional account was reduced to $38,036.60 even though no disbursements had been made on behalf of Edelman.

From February 1999 through May 1999, the respondent transferred an additional $32,000 from Edelman's High Yield Savings Account and $30,300 from her Revocable Trust Account into his own professional account in 11 separate transactions. The total amount transferred from Edelman's two accounts to the respondent's professional account between January 1998 and May 1999 was $144,300.

In July 1999, the balance in the respondent's attorney professional account was $30,871.35 although no disbursements had been made on behalf of Marie Edelman. Reifforth discharged the respondent in July 1999 and retained Harriette M. Steinberg, Esq., to represent Edelman. Efforts to obtain an accounting from the respondent for money held by him on behalf of Ms. Edelman were unsuccessful.

On August 10, 1999, Reifforth moved in the Supreme Court, Kings County, for the appointment of a special guardian for Edelman and to enjoin the respondent from having any further access to Edelman's bank accounts. At a hearing before Justice Scholnick on September 13, 1999, the respondent testified that a portion of the funds transferred from the Edelman accounts to his attorney professional account were used for the payment of legal fees. The respondent had never rendered a bill for legal services and estimated that he earned between $25,000 and $75,000.

Although Justice Scholnick found Edelman to be incapacitated within the meaning of Mental Hygiene Law article 81, he found that a guardian was unnecessary inasmuch as sufficient mechanisms were in place to permit Reifforth to care for Edelman. The court appointed Harvey Greenberg as special guardian to continue his investigation of Edelman's accounts and trusts and stayed all powers granted to the respondent pursuant to a power of attorney given him by Edelman.

Although Edelman died on July 6, 2000, the respondent had not, as of the date of the petition, provided an accounting of the funds held on her behalf or returned to the estate any of the funds in his possession.

Charge One alleges that the respondent failed to account for funds entrusted to him by Edelman, and converted those funds to a use other than that for which they were intended, in violation of Code of Professional Responsibility DR 9-102 (a) (22 NYCRR 1200.46 [a]).

Charge Two alleges that the respondent failed to maintain complete records of client funds in his possession and failed to

promptly pay or deliver those funds to the client or a third person, in violation of Code of Professional Responsibility DR 9-102 (c) (3) and (4) (22 NYCRR 1200.46 [c] [3], [4]).

Charge Three alleges that the respondent engaged in conduct involving dishonesty, deceit, and misrepresentation, in violation of Code of Professional Responsibility DR 1-102 (a) (4) (22 NYCRR 1200.3 [a] [4]).

Charge Four alleges that the respondent failed to comply with SCPA 2310 and 2311, and engaged in conduct adversely reflecting on his fitness to practice law, in violation of Code of Professional Responsibility DR 1-102 (a) (7) (22 NYCRR 1200.3 [a] [7]).

Charges Five, Six, and Eight are predicated upon the respondent's conduct with respect to his dealings with Edith Strauss.

In or about 1995, the respondent was retained by Ruth Rothstein, who sought to be appointed as guardian for her sister, Edith Strauss. Rothstein paid the respondent a $2,000 fee.

Rothstein was appointed guardian for Strauss on February 26, 1996. The respondent established a guardianship bank account for Strauss and maintained sole control of all records, including monthly statements and negotiated checks. He created a second guardianship account, with himself as signatory, without court approval. From that account, the respondent issued checks payable to himself in payment of additional legal fees in the sum of $2,750, without prior court approval, in violation of SCPA 2310 and 2311.

The respondent failed to file required annual accounts with the court which appointed Rothstein as guardian. In 1997, the court-appointed reviewer of guardian accounts in Queens County, Gary M. Darche, Esq., brought an application to remove Ms. Rothstein as guardian for Ms. Strauss based upon her failure to file an account. That motion was withdrawn when the respondent filed the account.

Upon the respondent's failure to file the account for 1998 and 1999, Darche again moved to remove Rothstein as guardian. Rothstein explained that her failure to file was due to the respondent's possession and control of all bank records relating to Strauss.

The respondent failed to attend a scheduled hearing before the Honorable Phyllis O. Flug on July 25 and July 26, 2000, despite being contacted by the court and being directed to appear. On August 15, 2000, Justice Flug conducted a sanc-

tions hearing at which the respondent was fined $250 for failing to appear.

Rothstein filed accountings for 1998 and 1999 after obtaining from the bank copies of all records in the respondent's possession.

Charge Five alleges that the respondent neglected a legal matter entrusted to him, in violation of Code of Professional Responsibility DR 6-101 (a) (3) (22 NYCRR 1200.30 [a] [3]).

Charge Six alleges that the respondent engaged in conduct prejudicial to the administration of justice, in violation of Code of Professional Responsibility DR 1-102 (a) (5) (22 NYCRR 1200.3 [a] [5]).

Charge Eight alleges that the respondent failed to carry out a contract of employment entered into with a client for professional services, in violation of Code of Professional Responsibility DR 7-101 (a) (2) (22 NYCRR 1200.32 [a] [2]).

Charges Nine and Eleven are predicated upon the respondent's conduct regarding Carmella Rizzi.

In 1996, Julius P. Knapp retained the respondent to assist him in managing the affairs of his mother, Carmella Rizzi, a resident of North Shore University Hospital Center for Extended Care (hereinafter the nursing home). Rizzi was adjudicated an incapacitated person and Mr. Knapp was appointed as her guardian. Rizzi's home was sold in September 1997, and the respondent deposited the proceeds of the sale into his Chase Bank escrow account instead of into the guardian account. The respondent informed Knapp that the funds would subsequently be transferred into a family trust. No trust was created or funded, and court approval was not obtained for its creation.

The respondent paid himself $33,802 from the Rizzi funds on deposit in his attorney escrow account. He neither obtained court authorization for that payment nor informed the guardian of those payments.

On January 23, 1998, the nursing home moved to remove Knapp as guardian for nonpayment of Rizzi's nursing home bills and for the sale of her home without court authorization. On March 10, 1998, a stipulation was entered into between the respondent and the nursing home in the Supreme Court, Nassau County, before the Honorable Frank S. Rossetti. By its terms, Knapp was directed to pay the nursing home $121,664.74 and the respondent was directed to pay $3,000 from his personal funds for legal fees and disbursements.

On December 15, 1998, the nursing home again moved for Knapp's removal for failure to pay Rizzi's bills. As a result of a hearing before Justice Rossetti on January 13, 1999, which was attended by the respondent, counsel for the nursing home, and the Court Examiner, Paula DiDomenici, a stipulation was entered on record. By its terms, certain obligations were imposed on Knapp, and the respondent was directed to file a Medicaid application on behalf of Rizzi within seven days and a final inventory within 45 days, and to pay counsel for the nursing home an additional $1,500.

On July 12, 1999, the nursing home moved to hold Knapp in contempt for failure to comply with the stipulation entered into on January 13, 1999. At a hearing before Justice Rossetti on August 18, 1999, the respondent appeared without Knapp. It was determined that Knapp was in contempt of the order dated January 13, 1999. He was sentenced to five days imprisonment, which was stayed for 45 days to allow him an opportunity to purge the contempt.

Following a hearing, Justice Rossetti determined that Knapp, a Maryland resident, relied upon the respondent to perform his fiduciary duties, that Knapp was not fully aware of the various proceedings brought against him as guardian, that all relevant bank records pertaining to guardianship funds were addressed to and forwarded to the respondent, and that Knapp was not to be held responsible for the respondent's conduct. The respondent was ordered to submit an affirmation of services, with time records concerning all legal fees paid, no later than November 5, 1999. The respondent failed to provide an affirmation and failed to appear at a hearing held on December 17, 1999, at which Justice Rossetti directed the respondent to return the $33,802 in unauthorized legal fees which he had paid himself out of guardianship funds.

The respondent turned over the unauthorized fees to the Court Examiner, Paula DiDomenici, in or about February 2000.

Charge Nine alleges that the respondent engaged in conduct constituting deceit and misrepresentation, in violation of Code of Professional Responsibilty DR 1-102 (a) (4) (22 NYCRR 1200.3 [a] [4]).

Charge Eleven alleges that the respondent prejudiced or damaged a client during the course of a professional relationship, in violation of Code of Professional Responsibility DR 7-101 (a) (3) (22 NYCRR 1200.32 [a] [3]).

Based on the voluminous evidence adduced, the Special Referee properly sustained Charges One through Six, Eight, Nine,

and Eleven. Accordingly, the petitioner's motion to confirm the Special Referee's report is granted to the extent that Charges One through Six, Eight, Nine, and Eleven are sustained. To the extent that we find that Charges Seven and Ten should not have been sustained as drafted, the motion to confirm is denied. The respondent's cross motion is denied except for the branches thereof which are to disaffirm Charges Seven and Ten and asking that the Court give careful consideration to the mitigation offered by him.

In determining an appropriate measure of discipline to impose, we have considered the mitigation offered by the respondent, including numerous letters attesting to his good reputation in the community and his pro bono and bar association activities. The respondent has detailed his psychological history and the personal and medical difficulties which have beset his family for over nine years. According to the respondent, those factors affected his decision-making and contributed to his commission of certain errors of judgment in his practice of law, including his difficulty, at times, in promptly attending to the needs of some clients and in maintaining good client communications.

Notwithstanding his defenses to the specific charges, the respondent acknowledges that he committed wrongdoing, including errors of judgment. Although his conduct was concededly deficient, the respondent believes that he acted in good faith and never with avarice, venality, or intent to do harm. According to the respondent, he refrained from expressing remorse during the course of the hearing for fear that such an expression may have been misconstrued as an admission of the Disciplinary Rule violations alleged.

The respondent acknowledged that he was partially responsible for the delay in completing the Medicaid application in the Rizzi matter. He asks the Court to note that he repaid all fees taken by him without prior court approval.

The petitioner points out the respondent's significant disciplinary history, which includes five letters of admonition and nine letters of caution between July 6, 1995, and October 17, 2001. The respondent also received a public reprimand from the Supreme Court of Florida, dated March 8, 2001, based upon neglect of a legal matter entrusted to him, failure to cooperate, and misrepresentation with respect to the underlying matter.

The evidence reveals that the respondent targeted clients who were likely to be vulnerable to his manipulation, including

the elderly or the incapacitated. He ignored Court rules with respect to fees, thereby enriching himself, transferred funds belonging to others to his own accounts, neglected guardianship matters, and damaged clients in order to protect himself. Three independent Court Examiners testified as the petitioner's witnesses, one of whom referred him for criminal investigation, in addition to former clients who testified with respect to his duplicity, greed, and indifference to their legal matters.

Under the totality of circumstances, the respondent is disbarred.

PRUDENTI, P.J., RITTER, SANTUCCI, ALTMAN and FLORIO, JJ., concur.

Ordered that the petitioner's motion to confirm the Special Referee's report is granted to the extent that Charges One through Six, Eight, Nine, and Eleven are sustained and is denied with respect to Charges Seven and Ten; and it is further,

Ordered that the respondent's cross motion is granted only to the extent that Charges Seven and Ten are disaffirmed, and the Court has considered the character evidence offered in mitigation, and is otherwise denied; and it is further,

Ordered that pursuant to Judiciary Law § 90, effective immediately, the respondent, Charles S. Butin, is disbarred, and his name is stricken from the roll of attorneys and counselors-at-law; and it is further,

Ordered that the respondent shall comply with this Court's rules governing the conduct of disbarred, suspended, and resigned attorneys (see 22 NYCRR 691.10); and it is further,

Ordered that pursuant to Judiciary Law § 90, effective immediately, Charles S. Butin is commanded to desist and refrain from (1) practicing law in any form, either as principal or as agent, clerk, or employee of another, (2) appearing as an attorney or counselor-at-law before any court, judge, justice, board, commission, or other public authority, (3) giving to another an opinion as to the law or its application or any advice in relation thereto, and (4) holding himself out in any way as an attorney and counselor-at-law.